

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2003

# Bamory v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket 02-2515

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Bamory v. Atty Gen USA" (2003). *2003 Decisions.* Paper 663.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/663

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 02-2515

BALLO BAMORY,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES;
JAMES W. ZIGLAR,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A-73-518-030)

Submitted Under Third Circuit LAR 34.1(a)
on March 31, 2003

Before: MCKEE, SMITH, COWEN, <u>Circuit Judges</u>

(Filed April 4, 2003)

OPINION

SMITH, Circuit Judge

I.

Bamory Ballo[1] appeals from the May 17, 2002 order of the Board of Immigration

Appeals (hereinafter "BIA"), affirming the immigration judge's denial of his applications

for asylum and withholding of removal. The BIA sustained Ballo's appeal with respect to

his request for voluntary departure, and Ballo does not seek review of that decision. The

petition for review will be denied.

Bamory Ballo is a native and citizen of Ivory Coast. Ballo testified that he is

Muslim and that his hometown of Anyama is predominantly Christian. Ballo, along with

two other individuals, formed a religious group in Anyama called "Explosif," which

advocates changes in the interpretation of the Koran that are contrary to the traditional

practice of the Muslim religion. Ballo testified that at an Explosif meeting in Anyama in

June 1990, "the police came to look for and take the heads of the group Explosif," and that

he fled when the police arrived. After staying in a stranger's home temporarily, Ballo

returned to his own home and remained there for a few days, without incident. He then left

Anyama to stay with his grandmother in Gagnoa, another town in Ivory Coast. Two weeks

later Ballo received a letter from his father informing him that the two other original

members of Explosif had been captured by police: one was dead and the other was

---

[1] Although our Automated Information Management System, which governs case captioning, refers to petitioner as "Ballo Bamory," the briefs and record before the Court indicate that his name is "Bamory Ballo," and we will refer to him as Bamory Ballo.

imprisoned. Despite this news, Ballo remained in Gagnoa for approximately nine months, from June 1990 to February 1991. He then left Ivory Coast, but returned to Anyama in September 1992. After a fellow member of Explosif was arrested and he heard that the police were pursuing him as well, Ballo left Anyama. He then obtained a visa and traveled to the United States.

Ballo arrived in the United States on December 16, 1992 as a non-immigrant visitor for pleasure with authorization to remain for a period not to exceed six months. Ballo stayed in the United States beyond June 16, 1993 without authorization from the INS. In fact, Ballo lived in the United States for four years and applied for asylum only upon arrest by the INS. On October 24, 1995, the INS issued an Order to Show Cause, charging Ballo with being deportable under the Immigration and Nationality Act (hereinafter "INA") section 241 (a)(1)(B), 8 U.S.C. § 1231 (a)(1)(B).

At a June 6, 1996 hearing before an immigration judge, Ballo admitted the factual allegations against him and conceded his deportability. On December 19, 1996, Ballo testified at a hearing in support of his asylum application. The immigration judge found Ballo deportable and denied his applications for asylum, withholding of deportation, and voluntary departure. Ballo sought timely review by the BIA. The BIA conducted a *de novo* review of his claim and issued an order on May 17, 2002 dismissing the appeal in part and sustaining the appeal in part. The BIA affirmed the immigration judge's denial of asylum and withholding of removal, but granted Ballo the privilege of voluntary departure. Whereas the immigration judge had based his decision on an adverse credibility finding, the

BIA concluded that "even assuming the truth of his testimony, which is consistent with his statement attached to his written asylum application, we would agree with the Immigration Judge's conclusion that the respondent has failed to establish eligibility for asylum or withholding of deportation." A.R. 2-3. Ballo timely appealed the BIA's decision.

## II.

Because Ballo first applied for asylum prior to September 30, 1996, the immigration judge had subject matter jurisdiction under former sections 1158 and 1253(h) of Title 8 of the U.S. Code (1995). *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) (hereinafter "IIRIRA"), Section 309(c)(1)(B) (in the case of "an alien who is in exclusion or deportation proceedings as of the effective date of the statute . . . the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments"). The BIA had appellate jurisdiction pursuant to 8 C.F.R. § 3.1(b)(2) (1995). This Court has jurisdiction to review the BIA's order pursuant to former section 106(a) of the INA, 8 U.S.C. § 1105a(a). *See Chang v. INS*, 119 F.3d 1055, 1059 (3d Cir. 1997) (noting that cases where the initial deportation order was issued before September 30, 1996 are governed by former section 106(a) despite its repeal).

## III.

On appeal, Ballo challenges the BIA's determinations that he failed to demonstrate past persecution or a well-founded fear of future persecution, and that he did not meet the

standard for withholding of removal. Because the BIA's conclusions are supported by substantial evidence, we will affirm.

An alien is eligible for a discretionary grant of asylum only if he is unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(a). The burden to prove a well-founded fear of persecution lies with the applicant, who must demonstrate that he has a genuine fear of persecution, and that a reasonable person in the same circumstances would similarly fear persecution if returned to the native country in question. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). An applicant who establishes past persecution, however, benefits from a presumption that he has a well-founded fear of future persecution. *See, e.g., Obianuju Ezeagwuna v. Ashcroft*, 301 F.3d 116, 126-27 (3d Cir. 2002).

Withholding of removal is available under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3) (2000). This section provides that the Attorney General may "not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in such country on account of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *INS v. Stevic*, 467 U.S. 407 (1984); *Obianuju Ezeagwuna*, 301 F.3d at 127. The burden on the alien to prove eligibility for the non-discretionary withholding of removal is higher than the standard for a well-founded fear of persecution – there must be a "clear probability" that his or her "life or freedom

5

would be threatened."  8 U.S.C. § 1231(b)(3)(A); *Chang v. INS*, 119 F.3d 1055, 1059 (3d. Cir. 1997).  Accordingly, an alien who fails to demonstrate eligibility for asylum also fails to satisfy the more stringent standard for withholding of removal.  *Janusiak v. INS*, 947 F.2d 46, 47-48 (3d Cir. 1991).

As the resolution of these factual determinations has been delegated to the BIA, our review is circumscribed.  We limit our inquiry to ensuring that the BIA's findings are supported by substantial evidence.  *See, e.g. Gao*, 299 F.3d at 272 ("Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard."); *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Obianuju Ezeagwuna*, 301 F.3d at 126.  We may reverse only where the evidence compels a conclusion contrary to that of the BIA.  *Abdille*, 243 F.3d at 483-84.

At the outset, we agree with the BIA that, even assuming Ballo's testimony is credible, there is substantial evidence in the record to support the BIA's determination that he did not suffer past persecution.  In order to show past persecution, an asylum applicant must establish "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control."  *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (quoting *Navas v. INS*, 930 F.2d 784, 786 (9th

6

Cir. 2000)). This Court has stated that "persecution is an extreme concept that does not include every sort of treatment that our society regards as offensive." *Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir. 1993). The treatment Ballo experienced in his hometown of Anyama clearly does not meet this standard. As the BIA noted, "[t]he record reflects that the respondent was never arrested or harmed by government officials or anyone else while living in his homeland." In addition, Ballo offered no testimony that he received direct threats from anyone – he merely heard through others that the police were looking for him. The most the record reveals is that police were looking for Ballo, which he apparently construes as a threat, but this does not constitute persecution. The record establishes that Ballo remained in Ivory Coast without incident for nine months after his friends' arrests, albeit not in his hometown of Anyama, and that he returned to Anyama despite the fact that police were looking for him. There is no evidence in the record that would compel us to disturb the conclusions of the BIA with respect to past persecution.

Ballo's claim that he has a well-founded fear of future persecution if he is returned to Ivory Coast also fails. After reviewing the record, the BIA concluded that "[a]lthough he may subjectively fear being persecuted in the future based on his religion and association [sic] his religious group ("[E]xplosif"), the evidence presented does not establish that his fears are objectively reasonable. . . ." A.R. at 2-3. We agree. Given that Ballo lived in Gagnoa for at least seven months without incident after the police in Anyama started looking for him, we cannot conclude that his fear is objectively reasonable. In addition, Ballo voluntarily returned to his hometown of Anyama in 1992 to reform the Explosif

7

party, which undercuts his claim that he will be persecuted upon his return to Ivory Coast. We also note that Ballo did not apply for asylum until he was arrested by the INS after having lived in the United States for four years.

Furthermore, Ballo fails to establish that any perceived threat he might face upon his return to Ivory Coast is national as opposed to local. *See Etugh v. INS*, 921 F.2d 36, 39 (3d Cir. 1990) (no prima facie case for asylum where applicant "failed to allege that he would be persecuted beyond the limited vicinity of his hometown . . . . The scope of persecution [he] alleges is not national. . . ."). Ballo's testimony establishes, at most, a local dispute with a Muslim leader and the police in his hometown of Anyama. *See* Petitioner's Brief at 3 (Ballo fears he will be targeted "by the police of his town"); Petitioner's Brief at 4 (claiming petitioner refused to cooperate with "the local police force"); A. R. 137 (When asked "did the police look for you anywhere else?," Ballo responded, "Yes, in Anyama. But, I don't know if – I did not know if they had much [sic] search in any other part of the Country."). There is no indication that, should Ballo return to another part of Ivory Coast, he would be subject to any threats of harm.

A July 7, 1997 letter from the Department of State to the Immigration Court regarding Ivory Coast stated that "there is no evidence members of Islamic associations in Cote d'Ivoire are experiencing particular political problems. The most recent census in Cote d'Ivoire indicated that 44 percent of the population is Muslim." A.R. 209. "Mere membership in or affiliation with an Islamic organization in Cote d'Ivoire," the letter continued, "is unlikely by itself to be the basis for persecution by the government." *Id.*

8

Based on this evidence, we agree with the BIA that Ballo has not established by objective evidence "that the threat of persecution exists, if at all, on a country-wide basis, or that he could not avoid being persecuted by relocating to another part of the country." A.R. 3. Given the foregoing, there is substantial evidence in the record to support the BIA's determination that Ballo did not have a well-founded fear of future persecution.

We find no evidence in the record that would compel us to reverse the BIA's determination that, having failed to demonstrate eligibility for asylum, Ballo has similarly not met the standard for withholding of removal. We agree that he has not shown that it is more likely than not that his life or freedom would be threatened in Ivory Coast on account of his association with Explosif.

For the foregoing reasons, we will deny the petition for review of the May 17, 2002 decision of the Board of Immigration Appeals.


TO THE CLERK:

Please file the foregoing Opinion.

/s/ D. Brooks Smith
Circuit Judge

9